### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### AT LOUISVILLE

LEED HR, LLC

   Plaintiff

Case No. ___3:12CV-797-R___

v.

  REDRIDGE FINANCE GROUP, LLC

   Defendants

### COMPLAINT

** ** ** ** ** ** **

Plaintiff, LEED HR, LLC, for its Complaint against the Defendant, RedRidge Finance Group, LLC, states as follows:

## I. INTRODUCTION

1.  This matter is an action for damages for restitution of illegal broker fees and payments, breach of contract and unjust enrichment.  Plaintiff LEED HR, LLC, based in Louisville, Kentucky, engaged Defendant, a Chicago based investment advisor and broker, to raise money for General Employment Enterprises, Inc., a Chicago based staffing company majority owned by LEED.  In connection therewith LEED deposited with Defendant a $150,000 accountable due diligence "expense" deposit (the 'Deposit").  After Defendant failed to effect the proposed transaction, and well over a month after termination of the engagement, and only after a threat of litigation, Defendant and its President, Randy Abrahams, returned only $5,000 of the $150,000 deposit, claiming that it had expended $145,000 in due diligence expenses in the few weeks the engagement lasted.  Because Defendant and its principals were acting as brokers under the Securities Exchange Act of 1934, but are not registered as brokers under the Exchange Act, the engagement agreement is void and LEED

enjoys a right to restitution damages in the amount of the entire Deposit.  In the alternative, Defendant has overpaid itself from the Deposit in violation of the parties' engagement contract and has otherwise been unjustly enriched.

## II.  PARTIES

2.      Plaintiff LEED HR, LLC is a Kentucky limited liability company with its principal office located in Jefferson County Kentucky.

3.      Defendant RedRidge Finance Group, LLC ("RedRidge") is a Delaware limited company with a principal office located in Chicago, IL.

## III.   JURISDICTION

4.      This Court has jurisdiction and venue pursuant to §27 of the Securities Exchange Act of 1934 [15 U.S.C. 78aa].  This court also enjoys diversity jurisdiction under 28 USC § 1332 and Defendant is subject to the personal jurisdiction of this Court as set forth herein.

## IV.  FACTS

5.      Plaintiff is an investment holding company, which owns a majority of the shares of General Employment Enterprises, Inc. ("GEE"), a publicly traded staffing services provider based in Chicago, Illinois.

6.      In August 2012 LEED commenced discussions with Defendant respecting Defendant raising money for GEE.

7.      In early September 2012 those discussions resulted in an engagement letter with a financing proposal.  The engagement letter is attached as Exhibit A.  In the engagement letter RedRidge, on behalf of "RFG Fund I, LLC or an affiliate", set forth detailed proposed terms for a $16,500,000 financing.  These terms included a $6,500,000 four-year, high interest note and would have required GEE to issue to RFG or a nominee a large amount of warrants for GEE common stock.

The engagement letter also required a 4% "commitment fee".  The note and warrants are "securities" under § 3(a)(10) of the Securities Exchange Act of 1934, as amended.

8.      The engagement letter also required LEED to pay a $150,000 due diligence fee deposit for "all costs associated with establishing the Facility."  LEED wired $75,000 of the Deposit from its account at PNC Bank, Louisville, Kentucky to an account titled "RedRidge Finance Group LLC" at Ridgestone Bank in Brookfield Wisconsin on September 10, 2012.  LEED then sent (via overnight mail from Louisville) a $75,000 check drawn on the same Louisville PNC account payable to RedRidge Finance Group on or around September 24, 2012.

9.      Upon information and belief, neither RFG Fund I, LLC nor any other affiliate of Defendant had $16,500,000 available to finance the transaction, but instead Defendant set about raising funds for the proposed transaction from unrelated third parties.

10.     RedRidge advertises itself on its website as being a capital markets advisor and debt and equity intermediary, which also offers advisory services on mergers and acquisitions.  The website includes "tombstone" ads for specific transactions in which it has acted as "capital markets advisor." "Capital markets" are markets in which securities are traded.

11.     In conversations with LEED Abrahams made clear that he was going to take a portion of the warrants as part of his compensation for brokering the proposed financing.  Upon information and belief RedRidge would have also directed substantial amounts of the  commitment fee to itself for having brokered the transaction for the ultimate lender.

12.     The engagement terminated on October 1, 2012.  After not hearing from Abrahams as to the status of the Deposit, LEED demanded a refund in early November.  Abrahams claims only $5,000 of the Deposit is due back to LEED.

- 3 -

13.     In support of its claim to retain $145,000 of the Deposit, Defendant caused its attorney to email to LEED a summary invoice which stated that various Defendant internal employees had spent, in the aggregate, over 400 hours conducting unspecified due diligence activities (including substantial activities in Louisville, Kentucky) at rates ranging from $250 to $450 per hour (see Exhibit B).  It's obvious Defendant built a massive profit into these activities at the expense of LEED, rather than billing merely its "cost", as is contemplated under the engagement letter.  For example, a very junior associate, with limited educational and work experience credentials, was billed at $250 per hour.  At that rate, assuming he is fully employed for Defendant, his annual "cost" to RedRidge would be $500,000.  LEED believes the massive profit RedRidge builds into this expense is merely a fee for attempting to locate financing, i.e. a disguised broker fee.  Subsequently, Defendant caused its attorney to mail the Deposit refund  to Plaintiff at its office in Louisville.

14.     LEED also doubts the veracity of various billing entries on the invoice.  For example, Defendant purports to have spent 90 hours preparing a written report on its due diligence review, and refuses to provide LEED with a copy of it.  (Notwithstanding Defendant's 400+ hours and $145,000 worth of time purportedly spent on this matter, the invoice reveals Defendant apparently failed to learn the actual name of the company it was performing due diligence as to.)

15.     In addition, upon information and belief Defendant provided due diligence information developed on behalf of LEED (and charged to LEED), to a competitor of LEED and GEE in connection with that competitor's attempts to raise financing.  Further, LEED believes Defendant provided confidential information relating to GEE to that competitor in violation of Defendant's confidentiality agreement with GEE.

16.     Given the fact Defendant had not identified to LEED any likely finance candidates, and

nonetheless purported to run up $145,000 in "due diligence" fees rather than stage its due diligence activities based upon the status of its broker activities on LEED's behalf, this constitutes an unconscionable business practice.

## LEGAL CLAIMS

## COUNT I

### [Rescission and Restitution]

17.     Plaintiff reiterates and incorporates Paragraphs 1 through 16 as if fully set out herein.

18.     Defendant was acting as a "broker-dealer" as defined under §3 of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78c(a)(4)(A)], as amended, and authority interpreting that Section, in connection with the above described transactions.

19.     Defendant is not registered as a broker-dealer as required under §15(a)(1) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o(a)(1)).

20.     Section 29(b) of the Exchange Act (15 U.S.C. § 78cc(b))  provides that "[every] contract" made in violation of the Exchange Act or the performance of which involves such a violation "shall be void".

21.     The engagement letter was made in violation of the Exchange Act and the performance thereof and related contemplated transactions would have involved such a violation. Accordingly, the engagement letter is unlawful and void and Defendant must pay back to Plaintiff restitutionary damages in the amount of the Deposit.

## COUNT II

### [Breach of Contract]

22.     In the alternative to Count I, Plaintiff reiterates and incorporates Paragraphs 1 through 21 as if fully set out herein.

23.     As enumerated above, Plaintiff has breached the terms of the engagement letter by refusing to return the unearned portion of the Deposit by falsifying its "costs".

24.     Plaintiff disagrees with Defendant's accounting for the Deposit, demands an accounting thereof, and the return of amounts not earned in accordance with the engagement letter.

## COUNT III

### [Unjust Enrichment]

25.     In the alternative to Count II, Plaintiff reiterates and incorporates Paragraphs 1 through 24 as if fully set out herein.

26.     Defendant was given a $150,000 deposit to cover Lender's costs associated with the Facility transaction.

27.     The Facility was never established and the ostensible Lender—"RFG Fund I, LLC"--- never suffered any costs associated with the Facility.

28.     LEED believes there was a limited likelihood that Defendant had the wherewithal to ever establish the Facility.

29.     In fact, in large part the Deposit was used by Defendant to pay itself a non-accountable fee for attempting to establish the Facility.

30.     It would be unjust for Defendant to retain almost the entire Fee to the detriment of LEED.

*******************************************

LEED reserves the right to amend its Complaint to include other defendants and claims, including

without limitation adding additional defendants liable as control persons under 15 U.S.C. § 78t, and

fraud, conversion and civil RICO claims if Defendant converted the Deposit and discovery yields

evidence that Defendant's *modus operandi* is to defraud its customers with fraudulent engagement

letters and phony invoices to support its outrageous fees [wire fraud].

WHEREFORE, Plaintiff demands as follows:

1.      For the return of the Deposit;

2.      For interest at the maximum legal rate;

3.      For all costs herein expended;

4.      For a trial by jury;

5.      All other relief to which Plaintiff may be entitled.

Respectfully submitted,


 _/s/ Judson B. Wagenseller__
Judson B. Wagenseller
11921 Brinley Ave., Suite 203
Louisville, KY 40243
(502) 410-6905
*judwag@insightbb.com*
COUNSEL FOR PLAINTIFF