UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CASE NO. 3:12-CV-00797

**LEED HR, LLC**                                                                          **PLAINTIFF**

v.

**REDRIDGE FINANCE GROUP, LLC**                                   **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on the Defendant's motion to dismiss. (Def.'s Mot., Docket Number ("DN") 6.) The Plaintiff responded. (Pl.'s Resp., DN 7.) The Defendant replied. (Def.'s Reply, DN 8.) Fully briefed, the matter is now ripe for adjudication. For the following reasons, the Defendant's motion is **DENIED**.

**I.**

In this action, Plaintiff LEED HR, LLC ("LEED"), seeks to rescind a contract and recover $150,000 it paid to Defendant RedRidge Finance Group, LLC ("RedRidge") for a due diligence investigation RedRidge performed in conjunction with a proposed credit lending transaction. LEED's primary theory of recovery involves several provisions of the Securities Exchange Act of 1934 ("the '34 Act"). First, LEED contends that RedRidge is a "broker" as that term is defined in § 3(a)(4)(A) of the '34 Act. Second, § 15(a)(1) of the '34 Act makes it unlawful for a broker to transact in or attempt to transact in securities if the broker is not registered with the Securities and Exchange Commission ("SEC"). Finally, § 29(b) of the '34 Act states that any contract made in violation of any provision of the Act is void. Accordingly, LEED contends that the contract made by RedRidge is void because RedRidge, as an unregistered broker, attempted to transact in securities in conjunction with the credit lending transaction. Therefore, LEED claims that the contract may be rescinded, allowing it to recover

1

the $150,000 it paid to RedRidge for the due diligence assessment.  LEED also brings state law claims for breach of contract and unjust enrichment.

RedRidge moves to dismiss all of LEED's causes of action.  First, RedRidge contends that LEED has failed to state a claim under the terms of the '34 Act because RedRidge is not a "broker" as defined therein.  Second, RedRidge argues that once the Court dismisses LEED's federal cause of action, the state law causes of action must also be dismissed for lack of jurisdiction because LEED has failed to sufficiently plead the requirements of diversity jurisdiction.

Upon consideration of the pleading, the exhibits thereto, and the parties arguments, the Court finds that LEED has stated a plausible claim for relief under the '34 Act and that this action should proceed to discovery.  Simply stated, there is insufficient information before the Court to determine whether there RedRidge Financial Group, LLC, and another company, RFG Fund I, LLC, are the same or distinct entities.  If distinct, it is plausible that RedRidge was an unregistered broker of securities and the agreement between it and LEED for the due diligence assessment is void.

## II.

LEED is the majority owner of General Employment Enterprises, Inc. ("GEE").  In that role, LEED hired RedRidge to assist it in obtaining financing and working capital for GEE. An engagement letter sent to LEED by RedRidge on September 5, 2012, memorializes the proposed relationship between the entities.  (Engagement Letter, DN 1-1.)  In multiple places, the letter notes that its terms are a "proposal only," are "for discussion purposes only," do "not imply in any way a commitment," and are merely "a proposal to proceed with further review." (*Id.* at pp. 1, 7.)  In short, the engagement letter is a working framework between LEED and RedRidge that

outlines a potential credit facility by which GEE will receive financing and working capital. The letter in no way created an obligation to actually lend money.

The letter states that RedRidge "is pleased to advise [LEED] that RFG Fund I, LLC or an affiliate will consider establishing a credit facility under the terms and conditions" proposed in the engagement letter. (*Id.* at p. 1.) Although the specific terms of the credit facility are not important for resolution of the motion currently under consideration, it appears that RFG Fund I, LLC ("the RFG Fund"), contemplated lending GEE a total of $16.5 million. Had the loan been made, it would have been repaid under various conditions and at different interest rates, the details of which are unimportant here. In addition to the repayment terms, the engagement letter provides that "[i]n consideration of the credit accommodation described herein, Borrower[, GEE,] shall issue to RFG, or a nominee, on the Closing Date, a Warrant evidencing the right to purchase at least 12% of the common voting stock of such company." (*Id.* at p. 6.)

In preparation of the proposed credit facility, GEE agreed to pay "[a]ll costs associated with establishing the [credit facility] including, but not limited to, [the RFG Fund's] out-of-pocket expenses associated with the transaction, professional fees, underwriting fees of [the RFG Fund], appraisal fees, recording fees and filing fees." (*Id.* at p. 7.) These expenses were to be paid by GEE "regardless of whether the transaction closes." (*Id.*) Furthermore, upon acceptance of the engagement letter, GEE agreed to "remit a $150,000 deposit, which deposit shall be applied to such due diligence expense but [GEE] acknowledges that such fees and expenses for which [GEE] is obligated may exceed such deposit." (*Id.*)

The engagement letter was accepted by LEED on September 7, 2012, and the $150,000 deposit followed shortly thereafter. RedRidge then proceeded to perform its due diligence assessment of the proposed credit facility. For undisclosed reasons, the parties never formalized

3

the agreement and no loan was made to GEE as contemplated in the proposal. Thereafter, LEED instituted this litigation to recover the $150,000 deposit it paid for RedRidge's due diligence investigation.

As explained above, LEED claims that the contract under which it made the deposit is void because RedRidge was acting as an unregistered broker in violation of the '34 Act. RedRidge moves to dismiss for failure to state a claim on grounds that it is not a "broker" as that term is defined in the '34 Act.

### III.

The Federal Rules of Civil Procedure require that pleadings, including complaints, contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint may be attacked for failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and will draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Additionally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to the defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Even though a "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need

detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). A complaint should contain enough facts "to state a claim to relief that is plausible on its face." *Id.* at 570. A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). If, from the well-pleaded facts, the court cannot "infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (citing Fed. R. Civ. P. 8(a)(2)). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

## IV.

A brief overview of certain sections of the '34 Act is necessary to understand LEED's first cause of action. Section 3(a)(4)(A) defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others." 15 U.S.C. § 78c(a)(4)(A). Under § 15(a)(1), it is unlawful for any broker to "effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker is registered" with the SEC. *Id.* § 78o(a)(1). Finally, § 29(b) provides that "[e]very contract made in violation of any provision of this chapter or of any rule or regulation thereunder . . . shall be void" subject to certain exceptions not applicable in this case. *Id.* § 78cc(b). Section 29(b) "contemplates civil suits for relief by way of rescission and damages where the transactions are

void." *Eastside Church of Christ v. Nat'l Plan, Inc.*, 391 F.2d 357, 362 (5th Cir. 1968) (citations omitted). Where a broker is not registered with the SEC, it has been held that the broker violated § 15(a)(1) of the '34 Act by effecting transactions in securities and that the contracts related to those transaction were void. *See id.* In the present case, LEED contends that the contract under which it paid RedRidge $150,000 for the due diligence assessment is void for this very reason.

**V.**

Under the proposed credit facility, GEE was prepared to give the RFG Fund a warrant for 12 percent of GEE's common stock at closing. Neither party disputes that this warrant was a "security" as defined under the applicable securities laws. Therefore, one who engaged in the business of effecting or attempting to effect a transaction in the warrant for the account of another would be considered a "broker" under the '34 Act. The heart of RedRidge's motion to dismiss is that "even if the parties had entered into a financing deal that contained [the warrant terms], the fact that RedRidge was the party *receiving* the warrants means that it was not engaged in a securities transaction 'for the account of others.' Consequently, nothing about RedRidge's role in the proposed financing transaction fits with the ['34 Act's] definition of the term 'broker.'" (Def.'s Reply, DN 8, p. 3.)

RedRidge's argument in favor of dismissal appears to be that, had the proposed loan taken place, it would have been the party receiving the warrant for 12 percent of GEE's common stock. Since RedRidge, itself, would have been the recipient of the warrant, it could not be a "broker" because it was not effecting or attempting to effect that transaction "for the account of others" but rather for itself. While RedRidge's theory may ultimately prove true, the Court finds that LEED has pleaded a plausible claim for relief under the '34 Act and that the motion to dismiss must be denied.

## CONCLUSION

Defendant RedRidge Financial Group, LLC, moved to dismiss the complaint by Plaintiff LEED HR, LLC. For all of the foregoing reasons, **IT IS HEREBY ORDERED** that the motion is **DENIED**. **IT IS FURTHER ORDERED** that LEED's motion to strike RedRidge's reply (DN 9) is rendered **MOOT** by this memorandum opinion and order.